IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

WESTERN DIVISION

| | |
|---|---|
| BRETT ABRAMS, | Brief in support of motion |
| Plaintiff | for a finding of Contempt |
| | and to Enforce |
| | HAYDEN v. BUTLER |
| v. | |
| WILLIS J. FOWLER | |

Pro Se

### Statement of the case

This is a Rule 70(e) Fed. R. Civ. P. motion for a finding of contempt and to enforce the HAYDEN v. BUTLER order filed by a prisoner at Orange Correctional Center seeking relief based on the defendant's noncompliance with this court's order to afford juvenile offenders a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation through its parole procedures adopted by this court.

### Statement of facts

Plaintiff was sentenced to a Class C Life sentence in 1984 as a ~~fourteen~~ fifteen (15) year old and he became eligible for parole in 1993. Plaintiff has been denied parole for the last twenty-seven years and he has been incarcerated for the last thirty-seven years.

In May of 2020, plaintiff was reviewed for parole under the new procedures adopted by this court for the second time. Plaintiff had a video-conference with the defendant where he discussed what he had learned from the 23 weeks of counseling with Dr. Conley that was previously recommended by the defendant after the last parole review and denial. (D-2) Also, plaintiff answered questions from the defendant and requested either a MAPP or parole. Plaintiff's mother, Linda Abrams, volunteers, Mike Whitt and Angel Sanchez, and plaintiff's work release supervisor, Thomas McGarrity all met with the defendant via teleconference in May.

On June 17, 2020, plaintiff was denied parole (D-1). The first specific reason for denial; your release at this time would unduly depreciate the seriousness of the crime or promote disrespect for the law, has been issued, upon plaintiff's belief, since plaintiff became eligible for parole 27 years ago in 1993. It has been carried over from the old procedures and has been used at the entire unrestrained discretion of the defendant and does not reflect the consideration of any of the holdings of Graham such as lessened culpability, greater capacity for change, retribution rationale, or proportionality.

The second specific reason for parole denial; your continued correctional programming in the institution will substantially enhance your capacity to lead a law- abiding life if released on a later date, has been rotated in and out of parole denial decisions at the entire unrestrained discretion of the defendant since plaintiff became eligible for parole 27 years ago. It has been carried over from the old procedures despite plaintiff's 37 years of continued correctional programming, plaintiff acquiring the highest form of correctional programming privilege in minimum custody which is level 3 work release, and also plaintiff following the recommendations of the defendant after the last parole denial (D-2).

The third specific reason for parole denial; There is a substantial risk that you would engage in further criminal conduct, has been utilized at the total discretion of the defendant for the course of my parole reviews for the past 27 years, and it is not supported by the facts that plaintiff has had only 11 infractions during the 37 years of incarceration with the last one being in 2005, that plaintiff has been in minimum custody (the lowest security level) since 1999, going out into the community for the last 17 years with community volunteers without incident and

unsupervised by prison staff, that plaintiff has been on work release in the community unsupervised by prison staff since 2008 without incident, and that his Risk Needs Assessment level is level 5 which is the lowest risk for recidivism, and that his psychological evaluations of note have been favorable for a MAPP or parole.

Despite the Supreme Court decision of Graham that was further extended by this court that mandates juvenile offenders sentenced to Life must be afforded a meaningful opportunity to obtain release based on demonstrated maturity, the defendant continues to issue parole decisions with an aim at punishment.

Despite the change in the parole procedures for the plaintiff, the defendant continues to hold actual parole reviews that afford the plaintiff with no more than the old standard required by Greenholtz where the Supreme Court determined that when a state "holds out the possibility of parole" it " provides no more than a mere hope that the benefit will be obtained"; such a " general interest" is " no more substantial than the inmates hope that he will not be transferred to another prison, a hope which is not protected by due process." 442 U.S. at 11. However, this plaintiff's case requires the standard of Graham that while stopping short of guaranteeing parole, it does provide the juvenile offender substantially more than a possibility of parole or a "mere hope" of parole; it creates a categorical entitlement to "demonstrate maturity and reform," to show that " he is fit to rejoin society," and to have a "meaningful opportunity for release." See Graham, 560 U.S. at 79.

Plaintiff does not presently possess parole denial letters from 1993- 2015 but they are in plaintiff's parole case file.

Plaintiff as a juvenile offender is entitled to a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.

It is within this court's authority to grant this motion.

Since the change in the parole procedures for juvenile offenders, the defendant has now added a need for counseling and cognitive behavior treatment/programming. It was never before required, is not a requirement for a MAPP or parole and is not being required of similarly situated adult offenders.

# ARGUMENT

## I

The manner in which the Defendant has

Conducted the parole procedures adopted by this

Court has provided the plaintiff with no more than

An opportunity to demonstrate maturity and rehabilitation

Not the opportunity to obtain release

Upon this parole review, plaintiff was sent a parole review self- report questionnaire that he filled out and sent back. Plaintiff also had a video conference with the defendant and had the opportunity to talk about what he had learned from the psychological counseling sessions that he had with Dr. Conley for 23 weeks that was a recommendation given by the defendant upon last parole denial (d-2) and plaintiff requested either a MAPP or parole. However, despite plaintiff's compliance with the defendant's recommendation of psychological counseling and demonstrated increase in self- awareness, plaintiff's 21 years of being in the lowest security level, 17 years of going out into the community with volunteers without incident and unsupervised by prison staff, working on different jobs in the community on work release since 2008 without incident and unsupervised by prison staff, being infraction free since 2005 and having only 11 infractions in 37 years, being case management compliant, having a favorable psychological evaluation from Dr. Conley, the defendant manages to minimize all of plaintiff's continued demonstrated maturity and rehabilitation and instead issues a parole denial that is punitive, continues to seek retribution, recommends continued correctional programming unto no end, and arbitrarily makes plaintiff out to be a risk that the prison record does not support.

This court issued the HAYDEN v. BUTLER order No. 5: 17-ct-03162-FL. With the meaning and intent that the defendant afford all juvenile offenders sentenced as adults a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation through the new procedures adopted by this court. However, after two parole reviews under the new procedures, the decisions have been no less arbitrary or punitive than they were throughout plaintiff's previous reviews that spanned the years of 1993-2015 because the holdings of Graham are not being applied to the parole decision making process.

The first specific reason for parole denial (d-1) has been used at the unrestrained discretion of the defendant, upon plaintiff's belief, since plaintiff became eligible for parole in 1993. It does not reflect any consideration given to the mitigations listed in Roper and Graham which established that children are constitutionally different from adults for sentencing purposes. Their "lack of maturity" and "underdeveloped sense of responsibility" lead to recklessness,

impulsivity, heedless risk-taking. Roper, 543 U.S., at 569. Furthermore, that they "are more vulnerable.... To negative influences and outside pressures," including from their family and peers; they have limited contro[l] over their environment" and lack the ability to extricate themselves from horrific, crime-producing settings. Ibid. And because a child's character is not as "well formed" as am adults, his traits are "less fixed" and his actions are less likely to be evidence of irretrievabl[e] deprav[ity] Id., at 57.

Also in Roper and Graham, The Court determined that " none of the goals of penal sanctions that have been recognized as legitimate-retribution, deterrence, incapacitation, and rehabilitation- provides adequate justification" for a Life without parole sentence for a juvenile non-homicide offender. Graham 560 U.S. at 71-74. Miller later extended this reasoning to include homicide because none of what science says about the late stage development of the adolescent brain is crime-specific. Plaintiff does not have Life without parole.

These holdings are supposed to be applied when plaintiff is considered for parole reducing the plaintiff's culpability, recognizing his greater capacity for change which is apparent on its face by the plaintiff's success inside prison that has afforded him the high level of working out in society unsupervised by prison staff, and by Proportionality, proportioning his term in prison based on proportionality which holds that criminal punishment should be based not only on the harm caused by the crime, but on the culpability of the offender. Graham 560 U.S. at 71-74. Plaintiff has been incarcerated for 37 years, has been eligible for parole for the last 27 years, and plaintiff's sincere efforts at maturity and rehabilitation reflect that he is not irredeemable.

The second specific reason for parole denial (d-1) has been repeatedly used totally at the unbarred discretion of the defendant. Plaintiff has collected 37 years of consistent correctional programming and growth achieving success at the highest level in the ;lowest security level, level 3 work release where he works amongst civilians, pays taxes, and does his duties on the job outside of the supervision of prison staff and had no complaints made against him or his work.

Plaintiff also complied with the defendant's recommendations after parole denial upon the prior review (d-2) of psychological counseling and was given a favorable evaluation by Dr. Conley and was commended by the defendant for his effort and demonstrated growth (d-1), but defendant continues to ask for more indefinitely instead of basing the parole decision on plaintiff's demonstrated maturity and rehabilitation. Any regime attempting to arbitrarily confine a juvenile until advanced age represents an implicit subversion of Miller.

While it is not the court's duty to review the defendant's entire parole review process and substitute its judgment in the place of the defendant, it is within this court's authority to decide whether the defendant is in compliance with constitutional law and the HAYDEN v. BUTLER order.

The third specific reason for parole denial (d-1) is arbitrary and distorts the real risk that plaintiff is. On March 7, 2017, plaintiff was given the results of his Risk Needs Assessment by

his case manager and the results stated that his risk level was minimal. In fact it classified him as a level 5 risk which is the lowest risk and his needs level was classified as low. (d-3) However, the defendant has either overlooked this assessment or ignored it altogether in stating that, there is substantial risks that plaintiff will engage in further criminal activity and by also stating that plaintiff needs more correctional programming.

Furthermore, plaintiff has not had an infraction in 15 years, only 11 total infractions in 37 years, goes out into the community regularly with volunteers unsupervised by prison staff prior to the Covid 19 pandemic and since 2003, and also has been on work release basically since 2008. None of this supports the defendant's contention.

Also, after 23 weeks of counseling with Dr. Conley, plaintiff was given a favorable evaluation. The defendant cannot substantiate the third specific reason for denial by plaintiff's record it is only their opinion which has denied plaintiff a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.

Graham v. Florida states, A state need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of term. 130 S. Ct.

When the defendant can continue to arbitrarily issue parole denial's that do not apply the holdings of Graham, the opportunity to obtain release cannot be considered to be a realistic opportunity.

## II

Defendant continues to utilize arbitrary bars

To confine plaintiff indefinitely and not afford

Plaintiff a meaningful opportunity to obtain

Release based on demonstrated maturity and rehabilitation

In HAYDEN v. BUTLER, the Court learned that the Parole Commission has the exclusive discretionary authority to grant or deny parole. See N.C.Gen. Stat. 143B-720 (2014) (authority of Parole Commission), and N.C. Gen. Stat. 15A-1371 (d) ( indicating that the Parole Commission "may refuse to release on parole a prisoner it is considering for parole if it believes" the prisoner falls under any of the criteria detailed in the statute); see also Goble v. Bounds, 13 N.C. App. 579, 583, 186 S.E. 2d 638, 640 ( We conclude that honor grade status, work release privilege, and parole are discretionary acts of grace or clemency extended by the State as a reward for good behavior, conferring no vested rights upon the convicted person."), affd., 281 N.C. 307, 188 S.E.2d 347 (1972). (emphasis added). The Fourth Circuit has determined that due process

requires only that the authorities "furnish to the prisoner a statement of [ their] reasons for denial of parole." Vann, 73 F. 3d at522 ( quoting Franklin v. Shields, 569 F. 2d 784, 801 (4th cir. 1977).

The Court then noted that, the Supreme Court in Graham viewed the question, not as one of due process, but in terms of the constitutional protections found within the Eighth Amendment. They held

[t] he Eighth Amendment states: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to the evolving standards of decency that mark the progress of a maturing society. This is because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The standard itself remains the same, but its applicability must change as the basic mores of society.*1007 Graham, 560 U.S. at 58, 130 S.Ct. 2011. Importantly, Graham then found that "[t]he Constitution prohibits the imposition of a Life without parole sentence on a juvenile offender who did not commit homicide." 560 U.S. at 82, 130 S.Ct. 2011; see also Miller, 123 S.Ct. at 2465 ( recognizing "this court held in Graham that life without parole violates the Eighth Amendment when imposed on juvenile offenders"). The Court continued that when a State sentences a juvenile and " imposes a sentence of life it must provide [ that child] with some realistic opportunity to obtain release before the end of that term." Graham, 560 U.S. at 82, 130 S. Ct. 2011. Therein, the opportunity must be "meaningful and "based on demonstrated maturity and rehabilitation." Id at 75, 130 S.Ct. 2011.

Despite the noted distinction made by the Supreme Court and again by this court in HAYDEN v. BUTLER, the defendant has continued to issue out parole decisions that reflect no more than their belief, belief that does not provide plaintiff a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.

Based on defendant's belief the first specific reason for parole denial (d-1) continues to be about retribution even after parole reviews that have spanned the years of 1993-2020. It has not been diminished by plaintiff's lessened culpability, any of the hallmark features attributed to youth, proportionality, or the retribution rationale that was observed in Roper, [w]hether viewed as an attempt to express the community's outrage or as an attempt to right the balance of the wrong to victim, the case for retribution is not as strong with a minor as with adults." 543 U.S., at 571, 125 S.Ct.1183.

Retribution is the most punishment oriented of all sentencing goals, and it is one which claims that we are justified in punishment because offenders deserve it.

The second specific reason for parole denial combined with the defendant's recommendation for a more favorable future decision (d-1) appears on the surface to be a legitimate penal interest and goal, however, rehabilitation cannot justify the indefinite confinement of a juvenile offender. Also, the recommended counseling is not a requirement for a MAPP or parole, was never even suggested by the defendant to the plaintiff before the change in the parole procedures, is not being required of similarly situated adults, and plaintiff received a favorable evaluation from Dr. Conley after 23 weeks of counseling before this parole review.

Here recently at Orange Correctional Center since the Covid 19 pandemic, 7 adult lifers and 1 de facto adult lifer were released early from prison and their MAPP's and they are now on parole. None of them had to undergo psychological counseling for 23 weeks before their parole reviews then get denied a MAPP or Parole and then be informed that they would have to continue with counseling indefinitely, none of them had been in minimum custody as long as the plaintiff, none of them had been on work release as long as the plaintiff, some of them had not even had work release out in the community.

Plaintiff only mentions these facts to speak to the court about the meaningfulness and questionable legitimacy of further incapacitating the plaintiff for continued correctional programming when it is not being required of similarly situated adults who have not achieved the success that plaintiff has throughout his incarceration.

In Miller v. Alabama(2012), the Supreme Court noted in footnote no#2, As the Court in Mistretta v. United States, 488 U.S. 361, 366 (1989), Congress passed the Sentencing Reform Act of 1984 to eliminate discretionary sentencing and parole because it concluded that these practices led to gross abuses. The Senate Report for the 1984 bill rejected what it called the "outmoded rehabilitation model" for federal criminal sentencing. S. Rep. No.98-225,p. 38 (1983). According to the Report, " almost everyone involved in the criminal justice system now doubts that rehabilitation can be induced reliably in a prison setting, and it is now quite certain that no one can really detect whether or when a prisoner is rehabilitated." Ibid. The Report also "observed that the indeterminate-sentencing system had two unjustifi[ed] and shameful consequences. The first was the great variation among sentences imposed by different judges upon similarly situated offenders. The second was uncertainty as to the time the offender would spend in prison. Each was a serious impediment to an evenhanded and effective operation of the criminal justice system." Mistretta, supra, at 366 (quoting S. Rep.98-225, at 38,65 (citation omitted)

Plaintiff in 1984 was sentenced at the age of fifteen, for a crime that he committed at the age of 14, to a Class C Life sentence that allowed him to be eligible for parole after 10 years, 1993. Thirty-seven years later in 2020, plaintiff is still in prison not because he has shown himself to be a management or behavioral problem, not because he has shown that he is irredeemable, not because he has not demonstrated maturity and rehabilitation, his prison record and his level 3 work release status speaks volumes as to that alone, the plaintiff is still incarcerated because the defendant which is supposed to afford the plaintiff a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation instead continues to reset the bar upon each parole review under the new procedures so that plaintiff has to continue to demonstrate maturity and rehabilitation in whatever ways the defendant deems fit rendering plaintiff's opportunity for release perpetually out of realistic reach. This is not in compliance with Graham or this Court's HAYDEN v. BUTLER order.

The third specific reason for parole denial (d1) completely disregards plaintiff's minimal risk status and finds him to be risk when no one and no test can project or predict plaintiff's future behavior with any certainty. The best indicators of plaintiff's future behavior are his years of consistent demonstrated maturity and rehabilitation.

It should be noted that, if plaintiff were charged and convicted for the same Class C murder today, it would be a B2 felony and he would not even be able to be sentenced to Life.

Regardless as to what all has been noted in Roper, Graham, and Miller, Supreme Court decisions about the late development of the adolescent brain and how it contributes to the juvenile poor decision-making, impulsivity, and heedless risk-taking, marking juveniles in Miller, "children are different" Miller, 132 S.Ct. at 2470 and also expressing that, juveniles have "lessened culpability" and a "greater capacity for change." Miller, 132 S.Ct. at 2460, and informing the state that…[w]hat a State must do….is give defendants…some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" Graham, 560, U.S. at 75, 130 S.Ct. 2011, the defendant continues to ineffectively acknowledge and incorporate these holdings into the parole procedures and decision-making process.

The defendant's decision to deny parole for the specific reasons that it has stated (d-1) breeds in and of itself uncertainty as to plaintiff's continued and indefinite stay in prison and raises profound questions about redemption, justice, and fairness especially when the age of the plaintiff at the time of the offense (14) and his present age of (52) with a prison record as exemplary as his and psychological evaluations that reflect that he is no longer the wayward, poor decision making youth of his past.

This Court adopted the defendant's parole procedures because the old procedures were unconstitutional. The new procedures imposed a duty on the defendant to comply with the holdings and mandate of Graham not to seek to circumvent the release of juvenile offenders.

Defendant's parole review of this plaintiff reveals that when left to their own devices in the first instance, that they will continue to practice unconstitutionally, and base their decision on whether to parole the plaintiff on other factors outside of demonstrated maturity and rehabilitation in deference to Graham and this Court's order, and the Eighth Amendment.

For the continued violations of plaintiff's constitutional rights and violation of this court' order, plaintiff request the relief of:

1) Order the defendant to provide plaintiff with a meaningful opportunity for parole by requiring the defendant to consider in its parole decision plaintiff's youth at the time of the offense and his demonstrated maturity and rehabilitation.

2) Restart plaintiff's parole review at the point where he was denied parole.

9

Case 5:20-ct-03231-M Document 1-1 Filed 07/21/20 Page 9 of 11

3) Order the defendant to provide plaintiff with a meaningful opportunity for parole by requiring the defendant to develop and implement policies that appropriately takes into account in parole decisions youth at the time of the offense and demonstrated maturity and rehabilitation.

4) Order the defendant to recognize distinction between children and adults that have been identified by case law as relevant to parole determinations.

5) Return to the plaintiff his filing fee and pay the court cost.

6 Fine defendant $ 10,000 dollars for every day over sixty days that it takes to get into compliance with this court's order.

7) Fine defendant $5,000 dollars for every day over sixty days that it takes to further afford plaintiff with a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation within a review that comports to Graham.

8) And any further relief that this court deems appropriate.

Respectfully submitted on this day of **17** July 2020 by

Signature **Brett Abrams**

****************************************

## CERTIFICATE OF SERVICE

I hereby certify that on this day I filed the foregoing Plaintiff's **MOTION FOR A FINDING OF CONTEMPT AND TO ENFORCE HAYDEN v. BUTLER** IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DIISTRICT WESTERN DIVISION and that is truthful.

Brett Abrams

Post Office Box 1149

Hillsborough, N.C. 27278

Signature: *Brett Abrams*