THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO. 5:20-CT-03231-M

BRETT ABRAMS,

   Plaintiff,

v.

WILLIS J. FOWLER,

   Defendant.

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR SANCTIONS [D.E.27]**
**Rule 37**

NOW COMES Defendant, Willis J. Fowler ["Defendant"] by and through counsel, responding to Plaintiff's Motion to Compel, D.E. 27. In support of this Response, Defendant and his counsel state the following:

### Introduction

On March 30, 2023, Plaintiff filed a motion to compel production of discovery previously objected to by Defendant, and about which the parties could not reach an agreement, despite reaching a resolution on the vast majority of discovery issues between the parties. Plaintiff also seeks attorney's fees. However, Defendant and his counsel have acted with good faith and have valid bases for the remaining objections.

### Factual and Procedural Background

The factual background and procedural history are set out in D.E. 23, ¶¶3-33, 42; D.E. 31, ¶¶14-29.

### Argument

### This Court should deny any relief requested in Plaintiff's Motion to Compel.

Plaintiff is not entitled to the discovery he seeks to compel. As such, neither the actions of Defendant or his counsel, nor the arguments of Plaintiff's counsel, merit the relief Plaintiff requests.

Rule 26(b)(1) provides that "[p]arties may obtain discovery of any matter **not privileged**, which is **relevant** to the claims or defenses of any party." Fed R. Civ. P. 26(b)(1) (emphasis added). This Court's "discretion is guided, however, by certain basic principles. Thus, valid claims of **relevance and privilege** still cabin and restrict the court's discretion in ruling on discovery issues."

*Johnson v. Holt*, 2016 U.S. Dist. LEXIS 1531, at *4 (M.D. Pa. Jan. 7, 2016)(emphasis added). The "party moving to compel discovery bears the initial burden of proving the relevance of the requested information." *See Id.* (citations omitted).

"Information is relevant for the purposes of discovery when it is reasonably calculated to lead to the discovery of admissible evidence. *EEOC v. Freeman*, 288 F.R.D. 92, 100 (D. Md. 2012)(citations omitted).

This Court "is **required** to apply the balancing standards: **relevance**, **need**, **confidentiality** and **harm**. Even if the information sought is relevant, **discovery is not allowed where no need is shown**, or where compliance is unduly burdensome, or where the **potential harm caused by production outweighs the benefit**." *Insulate Am. v. Masco Corp.,* 227 F.R.D. 427, 432 (W.D.N.C. Jan. 13, 2005)(citations and quotations omitted)(emphasis added).

G.S. 148-76, incorporated by Standing Order 21-SO-11, mandates that inmate files only be "made available to law-enforcement agencies, courts, correctional agencies, or other officials requiring criminal identification, crime statistics, and other information respecting crimes and criminals." *See* N.C.G.S. § 148-76. Moreover, the Standing Order treats as "generally" confidential, Plaintiff's own records, **not those of other inmates**. *See Tarlton v. United States*, 430 F.2d 1351, 1352 (5th Cir. 1970)("[P]rison records of inmates are confidential and are not subject to inspection by the public.").

Plaintiff has argued the bases for Defendant's objections were not "privileged." *See* Exhibit 8 at 3, ¶4. However, "federal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to [compel discovery], even though the information requested . . . is not subject to a federal **evidentiary privilege**." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020)(emphasis added). Thus, federal common law recognizes a qualified privilege for official governmental information. *See Frederick v. Cal. Dep't of Corr. & Rehab.*, 2011 U.S. Dist. LEXIS 53269, at *10 (N.D. Cal. May 18, 2011), citing *Kerr v. United States Dist. Ct. for N.D. Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). To determine whether the **privileged governmental information** sought should be barred, "courts must weigh the potential benefits of disclosure against the potential disadvantages; if the latter is greater, the privilege bars discovery." *Frederick*, 2011 U.S. Dist. LEXIS 53269, at *10 (citations omitted). *See Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (affirming refusal to allow discovery of state parole records, which are not subject to a federal evidentiary privilege, based in part on confidentiality considerations); *McGoy v. Ray*, 164 F. App'x 876, 878 (11th Cir. 2006).

"The burden of compelling discovery of confidential information may be overcome by issuing a protective order." *Diamond Servs. Mgmt. Co. v. Knobbe*, 339 F.R.D. 334, 340 (D.D.C. 2021)(citations and quotations omitted). By its title and language, this Court's Standing Order contains within it, a protective order, which obviates the need for Defendant to continually request further protective orders. *See* 21-SO-11, Form C "Consent Protective Order"

> (The Court finds that during the course of this litigation, Defendants obtained and **will continue to obtain and disclose** to Plaintiff or the Court, information and documents . . . that are deemed confidential under federal and state law.. . .
>
> In light of the confidential nature of much of the information which will be produced in this litigation, **a Protective Order is necessary** to authorize the release of such confidential information.)

(emphasis added).

Under the Standing Order, Defendant has a right to object to the discovery that is confidential, be it "general confidential" or "attorneys' eyes only confidential." Even without Defendant's objection, Plaintiff is entitled to discover privileged information that is **limited** to the scope and purpose of discovery.

Courts have been more particularized in balancing the standards for discovery regarding inmate requests. In *Schauer v. Leb. Cty.,* 2014 U.S. Dist. LEXIS 84118, at *9 (M.D. Pa. June 20, 2014), the Court reasoned:

> [I]n a prison setting, inmate requests for far-reaching information can raise security concerns, and implicate a legitimate governmental privilege, a governmental privilege which acknowledges a governmental needs to confidentiality of certain data but recognizes that courts must balance the confidentiality of governmental files against the rights of a civil rights litigant by considering:
> . . .
> whether the information sought **is available through other discovery or from other sources**; and
> the **importance of the information sought to the plaintiffs case**.

*Id.*, citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa. 1973).

The Supreme Court expounded upon the prison-parole system's governmental interest by explaining that it recognized "the serious consequences which could flow from an unwarranted [order] to turn [sensitive prison documents] over" where the prison officials' "claims of privilege rest in large part on the notion that turning over the requested documents would result in substantial injury to the State's prison-parole system . . . in general by unjustifiably compromising the confidentiality of the system's records and . . . files." *Kerr*, 426 U.S. at 405.

3

Furthermore, **wholesale requests** for such privileged information, will not override Plaintiff's burden, particularly when weighing Defendant's "serious consequences" of the harm to its governmental interests. *See Johnson v. Holt*, 2016 U.S. Dist. LEXIS 1531, at *7.

Regardless, discovery that is attorney-client privileged is so, without any qualifying balancing test, as said privilege is **evidentiary**. *See Zander v. DOJ*, 885 F. Supp. 2d 1, 16 (D.D.C. 2012)("The attorney-client privilege protects communications from attorneys to their clients if the communications rest on confidential information obtained from the client. In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer.")(citations omitted); *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 614 (D.S.C. 2017)

> (The fact that the attorney-client privilege covers relevant information is, in and of itself, no reason to abrogate the privilege. The entire purpose of the privilege is to preclude discovery of otherwise relevant information in an effort to promote a relationship between the attorney and the client whereby utmost confidence in the continuing secrecy of all confidential disclosures made by the client within the relationship is maintained.)

(citations and quotations omitted).

"The standard for imposing . . . sanctions . . . is purposefully high." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017). "[T]his Court must resolve all doubts in counsel's favor, [and] it views any such inconsistencies as good-faith attempts." *Brock v. Logsdon*, 2023 U.S. Dist. LEXIS 7719, at *10 (W.D.N.Y. Jan. 17, 2023).

For the following reasons, this Court should deny the relief requested in Plaintiff's motion to compel.

1. <u>No Obligation to Provide</u>

Neither Defendant nor his counsel could have acted in bad faith, when Defendant was not obligated to provide the discovery Plaintiff still seeks. The discovery is either irrelevant, subject to the Standing Order as a basis for objection, not been identified by Plaintiff, not otherwise subject to discovery, or already has been provided to either Plaintiff or his counsel in a manner sufficient to comply with his requests.

Defendant also objects to and has redacted portions of its manual, as it contains copious recitations of the law. Defendant is not **obligated** to provide non-evidentiary documents or information such as the law to Plaintiff, particularly when the information and documentation stemmed from attorney-client privileged communications.

Other than names and OPUS numbers of other inmates and information relative to dates prior to those disclosed, Plaintiff has not articulated the nature of the information he believes he has not been provided, and simply has alleged that the missing

4

information is that which has been redacted. Any description of such alleged deficiencies is limited to information gleaned from Defendant's privilege log. As such, Plaintiff has not met his burden of showing that the redacted information is relevant to his alleged Eighth Amendment and/or Hayden claim.

Essentially, Plaintiff is seeking the redacted discovery for the purpose of a fishing expedition. *See Porter*, 461 F.3d at 1324. Thus Plaintiff has no additional right to the discovery otherwise redacted.

Plaintiff also is seeking what are additional interrogatories, by seeking explanations for Defendant's responses. However, Defendant is not obligated to respond, as Plaintiff has not served Defendant with interrogatories for the additional questions. Regardless, Defendant attempted to answer Plaintiff's questions during negotiations about discovery. *See* Exhibit 13, ¶¶ 2, 3. That Plaintiff's counsel wants further explanation, does not make Defendant's prior answers "evasive."

While requesting additional unserved interrogatories, Plaintiff also argues that Defendant's counsel failed to object to the number of interrogatories in its first attempt to respond to its discovery. However, the undersigned avers that assuming *arguendo* as to any waiver, good cause exists to excuse such a waiver, in that the undersigned attempted to draft objections in Defendant's first discovery response, while she still was under a doctor's care for an extended illness. *See* D.E. 31, ¶¶ 32, 34; Fed. R. Civ. P. 33(a)(4); *Erie Ins. Prop. & Cas. Co. v. Johnson*, 272 F.R.D. 177, 182 (S.D. W. Va. 2010)(holding that:

> [i]n determining the question of good cause, the Court should look into the circumstances behind the failure to object, whether it was inadvertent, defiant, or part of a larger calculated strategy of noncompliance. The Court may also look at subsequent actions by the party to ascertain whether it was acting in good faith.)

(citations and quotation omitted). Any failure to object to the number of interrogatories in January 2023 was inadvertent, and inconsistent with subsequent actions of the undersigned to negotiate with Plaintiff to resolve numerous discovery issues. Regardless, Defendant was not obligated to provide the information for questions that were not part of the interrogatories actually served. *See* Fed. R. Civ. P. 33(a)(1).

2. <u>Information and Documentation Prior to 2018</u>

Defendant objects to discovery for dates prior to 2018. Plaintiff has not shown how discovery for dates prior to 2018 is relevant to his allegations that Defendant violated his rights under the Eighth Amendment or the Hayden Agreement. The Hayden Agreement was entered in November 2017, but was not implemented until 2018, such that any allegedly wrongful acts by Defendant

prior to November 2017, already would have been litigated. *See* Stevens Aff. ¶¶ 7, 8. Therefore any admissible evidence would have to relate to Defendant's acts in or after 2018, not before.

   3. Other Inmates' Records

Records related to other inmates remain not simply confidential under G.S. 148-76 or the Standing Order, but privileged under federal case law. *See Tarlton*, 430 F.2d at 1352. Per Plaintiff's counsel, the purpose of seeking MAPP and parole data is to "discover other information about the backgrounds and characteristics of these individuals, including their crimes, other criminal history, and disciplinary history during incarceration.. . . [T]his information is relevant to determining if juvenile offenders are being treated differently than similarly situated adult offenders during the parole process." *See* Exhibit 8 at 2, ¶3. *But see Porter*, 461 F.3d at 1324 "[A]ppellants' argument that statistics will prove that the [Parole] Board has [discriminated against them] is irrelevant here. The appellants have failed to demonstrate how the discovery they request will show that the Board [discriminated against them].").

By seeking to tie other inmates to such data, Plaintiff seeks information that is not only irrelevant to his 1983 claim, but also irrelevant for purposes of discovery in any matter, e.g. other "bad acts." Evidence of "other bad acts" is "not a basis for discovery because, under Federal Rule of Evidence 404(b), evidence of prior acts is not admissible to show a character trait from which one could infer that a similar act took place." *See Hayden v. Maldonado*, 110 F.R.D. 157, 159 (N.D.N.Y. 1986).

Moreover, Defendant's lawsuit is specific to him, thereby minimizing the relevance of any discovery of Defendant's acts involving other inmates. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) (holding that a "plaintiff generally must assert **his own** legal rights and interests, and **cannot** rest his claim to relief on the legal rights or interests of **third parties**.")(emphasis added); *Singleton v. Wulff*, 428 U.S. 106, 114 (1976)

> ("Third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.. . . Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.").

Plaintiff has not made a showing that he has such a right in this matter. *See Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215 (4th Cir. 2020)

> ("[T]he Supreme Court has generally limited [an] exception by requiring parties seeking third-party standing to make two showings. First, the court must ascertain whether the party asserting the right has 'a close

relationship' with the person who possesses the right. Second, the court must consider whether there is a 'hindrance' to the possessor's ability to protect his own interests.")

(citations omitted). Likewise, he has not filed an equal protection claim or a class action.

Whatever did or did not take place regarding other inmates, also is irrelevant, as proportionality of life with the possibility of parole, is not subject to this or any other court's discretion. *See Enmund v. Fla.*, 458 U.S. 782, 825 (1982)(O'Connor, J. dissenting)(defining proportionality as "nexus between the punishment imposed and the defendant's blameworthiness."); *State v. Stubbs*, 232 N.C. App. 274, 285-286, 754 S.E.2d 174, 182 (2014)("General Assembly has directed the Post-Release Supervision and Parole Commission [the Commission] to review matters of proportionality.")(citations and quotations omitted). *See also* N.C.G.S. § 143B-720 recodified as N.C.G.S. § 143B-1490 ("There is hereby created a Post-Release Supervision and Parole Commission . . . of the Department of Adult Correction with the authority to grant paroles."); N.C.G.S. § 148-48 ("Nothing in this Chapter shall be construed to limit or restrict the power of the Parole Commission to parole prisoners under such conditions as it may impose or prevent the reimprisonment of such prisoners upon violation of the conditions of such parole, as now provided by law."); *Harwood v. Johnson*, 326 N.C. 231, 240, 388 S.E.2d 439, 444 (1990) (holding that the "Commission has the exclusive authority to grant or deny paroles."); *Franklin v. Shields*, 569 F.2d at 791 ("Execution of the United States parole system rests on the discretion of an administrative board."); *United States v. Malloy*, 568 F.3d 166, 180 (4th Cir. 2009)("This court has held that proportionality review under the Eighth Amendment's cruel and unusual punishment clause **is not available** for any sentence **less** than life imprisonment without the possibility of parole.")(citations and quotations omitted)(emphasis added); Stevens Aff. ¶5.

Even assuming *arguendo* that a balancing test was necessary, Plaintiff could not overcome the legitimate government interest in protecting the information related to the identification of other inmates. *See Torres v. Harris*, 2019 U.S. Dist. LEXIS 8791, at *10-12 (M.D. Pa. Jan. 18, 2019)(holding that the production of the prison documents related to third party inmates "unduly infring[ed] upon the privacy interests of other inmates").

Plaintiff's argument that OPUS numbers and names of inmates are publicly available, is unavailing. The names and OPUS numbers are tied to information about the inmates that **is not publicly available**, e.g. whether they were granted a MAPP agreement. *See* Exhibit 8 at 2, ¶3. As to those paroled, Plaintiff's argument is contradictory, as he also has argued that whether or not an inmate has been paroled is publicly available. *See* Exhibit 8 at 2, ¶3, n. 1. As such, the balancing test in *Kerr*, *Insulate Am.* and *Frankenhauser* does not support an order compelling the disclosure of information that is available elsewhere.

Regardless, by identifying the inmate, the data then becomes privileged. *See Hinkley v. Jessee*, 2015 U.S. Dist. LEXIS 196167, at *9 (E.D. Wash. Oct. 7, 2015)(holding where "Defendants produced grievances and kites related to cell searches and harassment but **redacted information identifying the grieving offender**," "the Defendants ha[d] adequately responded to Plaintiff's discovery request[,] and Plaintiff ha[d] not highlighted what discovery related to [his] request [was] outstanding or why the currently-available information [was] deficient")(emphasis added).

4. <u>Cybersecurity</u>

Defendant listed numerous portions of the Commission's training manual on its privilege log as security related, e.g. cybersecurity. *See* Stevens Aff. ¶11. G.S. 132-1.7, incorporated by the Standing Order, provides in part that "[p]ublic records . . . shall not include specific security information." *See* N.C.G.S. §132-1.7. If unredacted, the discovery of information related to the storage and access of Commission's files, undermines the safety and security of the parole system, by providing "specific security information," albeit cybersecurity. *See Schnatter v. 247 Grp., LLC*, 2022 U.S. Dist. LEXIS 10481, at *32 (W.D. Ky. Jan. 19, 2022)(holding that where the defendants argued their request to redact information was related to cybersecurity, "Out of an abundance of caution, the Court will grant that protecting Defendants' cybersecurity is a compelling reason to redact the [information]. . . . [T]he Court finds that the balance of interests tips in favor of granting the requested redaction secrecy."). Never mind, the information will provide details of the storage of parole files of not only Plaintiff, but other inmates. *See Jones v. Goord*, 2002 U.S. Dist. LEXIS 8707, at *20-21 (S.D.N.Y. May 15, 2002)(holding that an inmate's request for production of certain inmate data in its complete form should not be compelled as "the State would disclose not only the underlying data sought by the plaintiffs, but also the organizational framework of the databases, which would effectively disclose a great deal **about the way that DOCS maintains, stores, and classifies information**," thereby impacting the safety and security of the prison)(emphasis added).

Just as inmate files are confidential, so is information that could lead to their location and storage. Moreover, how or where the Commission's files are stored, is not relevant to Plaintiff's Eighth Amendment or Hayden claims. *But see Victor v. Lawler*, 2010 U.S. Dist. LEXIS 11207, at *11 (M.D. Pa. Feb. 9, 2010)("[W]hen addressing inmate requests for access to prison policy manuals, courts have reconciled the interests of inmate-plaintiffs and corrections officials by rejecting broadly framed requests for access to policy manuals."). In addition, Plaintiff has not shown the need for such information.

4. <u>Attorney-Client Privileged Information</u>

8

Defendant objects to and has redacted portions of the Commission's training manual that contain information that is attorney-client privileged, as **evidentiary** privilege protects the confidentiality of said information. *See Zander*, 885 F. Supp. 2d at 16.

The redactions related to documentation and information gleaned from communications with the Commission's counsel, following the exchange with counsel of confidential inmate information. *See Zander,* 885 F. Supp. 2d at 16; Stevens Aff. ¶11. Thus, regardless of relevance, the plain language of Rule 26 bars the redacted information from discovery. *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888) (stating that "the [attorney-client] privilege is that of the **client alone**.")(emphasis added). Thus the undersigned cannot waive the attorney-client privilege of any records maintained by the Commission.

5. <u>Defendant and his counsel did not act in bad faith</u>**.**

   a. Since June 28, 2022, Plaintiff's companion matter currently pending in Wake County Superior Court, has impacted the ability of Defendant's counsel to respond to matters in this case, including, but not limited to time needed to respond to an *ex parte* order in said matter, and time needed to negotiate an alternative resolution to the *ex parte* order. *See* Exhibits 1; 11 at 2, ¶6; 17; *See* D.E. 23, ¶¶ 17, 22; Exhibit 2.

   b. The undersigned immediately began working on Plaintiff's requests for discovery and corresponding with Plaintiff's counsel regarding the same; attempted to keep his counsel apprised of any setbacks; attempted to resolve disagreements regarding discovery; and attempted to consider any impact on Plaintiff in her requests for extensions. *See* Exhibits 2; 5; 7; 9; 10; 11 at 1 ¶4, at 3 ¶1; 12; 13; 15; 18; 23; D.E. 31, ¶¶ 25, 27.

   c. The voluminous nature of Plaintiff's file impacted the ability of the undersigned to respond to Plaintiff's requests for discovery without additional time. *See* D.E. 23, ¶¶ 16; Exhibit 2; D.E. 31, ¶¶ 16, 20.

   d. Unforeseen difficulties with personal crises, computer issues, conflicts with other cases and duties, and staffing issues, further impacted Defendant's counsel ability to respond to Plaintiff's requests without additional time. *See* D.E. 23, ¶¶ 7, 21, 24-33, 35; D.E. 31, ¶¶ 31-35.

   e. On March 27, 2023, the undersigned was unable to discuss the issue of the pending Motion to Compel with Plaintiff's counsel by phone. Although the undersigned indicated to Plaintiff's counsel that she did not have a direct number for Plaintiff's counsel, the undersigned avers that the undersigned had requested, but had not

received, a direct number for Ms. Xu's then supervisor, Lindsay Bass, as opposed to Ms. Xu. The undersigned's work calls are forwarded to her personal cell phone, which only accepts calls from known numbers. Otherwise calls are sent to voice mail. Plaintiff's counsel called from an unknown number associated with Los Angeles, California, which appeared as "SPAM;" and Defendant's counsel's cell phone sent the call to voice mail. *See* Exhibits 3-5; 16.

f. Defendant already has responded to most of Plaintiff's requests for discovery. *See* D.E. 31, ¶27; *Johnson v. Holt*, 2016 U.S. Dist. LEXIS 1531, at *1-2 (holding that the defendants were not compelled to produce additional discovery where it:

> appeared from [the plaintiff's filings] that he has, in fact, received some significant discovery from the defendants, and has also been provided a privilege log of responsive, but allegedly privileged documents. Therefore, this is not a case where there has been a wholesale failure of discovery. Rather, it appears that [the plaintiff] received responses to his discovery requests, but is dissatisfied with the scope of discovery.. . . It also appears that much of the discovery [the plaintiff] still seeks relates to . . . material that is typically cloaked in some measure of privilege.).

g. Assuming *arguendo* as to any errors or omissions in Defendant's privilege log, any such errors or omissions were the result of the combination of the inability of the undersigned to work on the matter during her extended illness and the resulting time constraints posed by prior orders that no further extensions would be granted. *See* D.E. 31, ¶¶ 32, 34.

CONCLUSION

Defendant and his counsel have acted in good faith. Whereas Plaintiff has shown no need for discovery not already produced; the request invades the privacy of other inmates or is otherwise irrelevant; the potential for harm caused by producing said discovery poses a safety or security threat to the Commission and/or the parole system; and said potential outweighs the alleged benefit of the discovery to Plaintiff. This Court should deny any relief sought in Plaintiff's Motion to Compel.

Respectfully submitted the 24th day of April 2023.

                                        **JOSHUA H. STEIN**
                                        **Attorney General**

/s/ Sonya Calloway-Durham
Sonya Calloway-Durham
Special Deputy Attorney General
N.C. State Bar No. 21960
N.C. Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602-0629
Telephone:    (919) 716-6576
Facsimile:     (919) 716-6761
Email:          scalloway@ncdoj.gov

## CERTIFICATE OF SERVICE

I, Sonya Calloway-Durham, hereby certify that on this day, I electronically filed the foregoing with the Clerk of the Court utilizing the CM/ECF system, which provides electronic notification to Plaintiff's counsel of record as follows:

Daixi Xu
N. C. PRISONER LEGAL SERVICES
P. O. Box 25397
Raleigh, NC  27611
dxu@ncpls.org

This the 24th day of April 2023.

/s/ Sonya Calloway-Durham
Sonya Calloway-Durham
Special Deputy Attorney General